# IN THE COURT OF APPEALS OF IOWA

No. 23-1091
Filed May 8, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**SAM SANDO,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.

A defendant appeals the sentence imposed on his drug conviction after his

deferred judgment was revoked for repeated probation violations.  **AFFIRMED.**

Krisanne C. Weimer of Weimer Law, PC, Council Bluffs, for appellant.

Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney

General, for appellee.

Considered by Bower, C.J., Badding, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**BADDING, Judge.**

In July 2019, Sam Sando pled guilty to a reduced charge of possession of marijuana with intent to deliver. At his sentencing hearing in August, the district court granted the parties' joint request for a deferred judgment with two years of probation but warned Sando: "The deferred judgment is an opportunity for you to be successful on probation and not have a felony conviction on your permanent criminal history. . . . And so please take this as a wake-up call and take advantage of what's been given you here today." Sando did the opposite. After years of repeated probation violations, the district court revoked his deferred judgment, convicted him of the drug charge, and sentenced him to prison. Sando appeals.[1]

Just three days after receiving the deferred judgment, Sando admitted that he smoked marijuana. In the months that followed, he failed to maintain contact with his probation officer, pay court-ordered financial obligations, or obtain a substance-use evaluation. So in December 2019, the judicial district department of correctional services filed its first report of violations of probation. Sando stipulated to the violations and served five days in jail for contempt.

In August 2021, the court ordered Sando's probation to be extended for one year because he had yet to complete all the required terms of probation. Less than a month later, Sando discontinued contact with his probation officer. A third report of violations[2] was filed in November, this time recommending revocation of

---

[1] *See State v. Thompson*, 951 N.W.2d 1, 5 (Iowa 2020) (finding good cause to appeal following guilty plea where defendant was challenging "the order revoking her deferred judgment and entering a judgment of conviction and sentence").

[2] A second report of violations had been filed in April, which highlighted Sando's failure to maintain contact with his probation officer, among other violations. The

the deferred judgment and imposition of sentence. A warrant issued for Sando's arrest. A fourth report was filed in January 2022, after Sando was arrested on charges of domestic abuse assault. Sando bonded out of jail later in January. By March, Sando had racked up more violations for failing to obtain a substance-use evaluation, along with his frequent use of marijuana. A fifth report was filed that month, followed by two more reports of violations in April. Those sixth and seventh reports came after Sando was arrested for first-degree murder.

A hearing on the pending reports of violation was continued to June 2023 while Sando remained in jail awaiting trial on the murder charge. A jury ultimately acquitted him of that charge. An eighth report of violations was filed the week before the revocation hearing, which noted Sando had been charged with no-contact-order violations for making hundreds of phone calls from jail to the protected party. The report also alleged that he had possessed a firearm and participated in a drug deal in January 2022.

At the hearing, Sando stipulated to the violations alleged in the November 2021, January and March 2022, and January 2023 reports of violation. He also stipulated to violating the no-contact order as alleged in the most recent report of violations. A police detective and Sando's probation officer testified about the remaining violations. Those violations focused on Sando's participation in a drug buy turned attempted robbery—during which Sando possessed a firearm and a victim was fatally shot—and Sando's failure to report that he was the subject of a murder investigation. At the close of this evidence, the parties agreed Sando's

---

parties later agreed to dismiss these violations after Sando reengaged with his probation officer.

deferred judgment should be revoked. The court reached the same conclusion, after finding that Sando had violated his probation in all respects alleged.

As to sentencing, the probation officer recommended a term of imprisonment. The officer explained that based on Sando's history of violations—even while incarcerated—and absconsion from probation, he could not be effectively supervised in the community. The State echoed the officer's recommendation, zeroing in on Sando's continued probation violations during the fourteen months he was in jail on the pending murder charge: "[E]ven placing the defendant into custody while the murder case was pending did not prevent him from willfully violating court orders, and I think that is significant. This defendant has no respect for the Court."

In turn, defense counsel asked for any sentence short of prison, asserting Sando was a changed man due to his fourteen months in custody: "Mr. Sando has had ample opportunity to relive and reassess his life and the decisions that he made prior to being in jail." Counsel argued that "[p]rison at this point would have no rehabilitative effect on Mr. Sando" or help "him to move forward in a more positive way." Sando repeated these sentiments in his statement of allocution, telling the court, "I stand here completely a whole different person." He explained the struggles in his life that led to the repeated violations of the no-contact order, and he highlighted his family circumstances. In the end, Sando asked for "another chance," stating: "I don't think that any other time, any prison time would even, you know make me any more a different person. I've changed, you know." Based on all the information before it, and the sentencing goals of rehabilitation and

protection of the community, the court found an indeterminate term of imprisonment not to exceed five years was warranted.

We review sentences imposed in a criminal case for correction of errors at law and "will not reverse the decision of the district court absent an abuse of discretion or some defect in the sentencing procedure." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). "Sentencing decisions . . . are cloaked with a strong presumption in their favor." *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000) (alteration in original). And "[o]ur task on appeal is not to second-guess the sentencing court's decision." *State v. McCalley*, 972 N.W.2d 672, 677 (Iowa 2022) (citation omitted).

On appeal,[3] Sando claims "the district court abused its discretion by imposing a term of imprisonment rather than a term of probation" because it failed to consider the possibility of a suspended sentence with continued probation or his time in custody before sentencing, which had a "rehabilitative effect" on "his ability to comply with a term of probation going forward." These considerations were placed squarely before the court when it reached its sentencing decision, and Sando has not affirmatively shown the court failed to consider them. *See State v. Wickes*, 910 N.W.2d 554, 572 (Iowa 2018) (noting presumption of sentencing

---

[3] While one of Sando's brief headings states "the district court erred in revoking [his] deferred judgment and probation," the body of his argument only challenges the court's sentencing decision. We consider any argument challenging the revocation of the deferred judgment waived. *See* Iowa R. App. P. 6.903(2)(a)(8)(3) (renumbered from rule 6.903(2)(g)(3), effective April 1, 2024). And because Sando agreed at the combined revocation and sentencing hearing that the deferred judgment should be revoked, error was also not preserved. *See Jasper v. State*, 477 N.W.2d 852, 856 (Iowa 1991) (noting a litigant "cannot deliberately act so as to invite error and then object because the court has accepted the invitation").

validity is only overcome by an affirmative showing of a defect in sentencing procedure). The court was not required to explain its reasoning for rejecting Sando's requested sentence. *See State v. Ayers*, 590 N.W.2d 25, 28 (Iowa 1999). Nor was it required to acknowledge each claim of mitigation. *State v. Boltz*, 542 N.W.2d 9, 11 (Iowa Ct. App. 1995). And to the extent Sando argues the court disregarded the factors in Iowa Code section 907.5 for suspending sentence, the written sentencing order specifically stated the sentence was based on all the considerations in that provision.

Sando goes on to mischaracterize his probation violations as "hiccup[s]," "technical violations," or mere "inconsistencies in . . . compliance with reporting requirements" in arguing the sentence was "unduly severe." But really, he is asking us to substitute the decision of the district court with our own, which we cannot do. *See McCalley*, 972 N.W.2d at 677. Last, while Sando complains the court gave more weight to protecting the public than other sentencing considerations, "[t]he right of an individual judge to balance the relevant factors in determining an appropriate sentence inheres in the discretionary standard." *State v. Wright*, 340 N.W.2d 590, 593 (Iowa 1983). In other words, "the district court enjoys the latitude to place greater importance on one sentencing consideration over others." *State v. Latcham*, No. 10-1262, 2011 WL 1138569 , at *3 (Iowa Ct. App. Mar. 30, 2011).

Finding no affirmative showing of an abuse of discretion or defect in the sentencing procedure, we affirm the sentence imposed.

**AFFIRMED.**